# In the United States Court of Federal Claims

No. 15-803V
(Filed under seal July 29, 2021)
(Reissued September 7, 2021)[†]
NOT FOR PUBLICATION

```
* * * * * * * * * * * * * * * * * * * * * * * *
                                              *
SAMUEL WEBB,                                  *
                                              *
                        Petitioner,           *
                                              *
            v.                                *
                                              *
SECRETARY OF HEALTH                           *
AND HUMAN SERVICES,                           *
                                              *
                        Respondent.           *
                                              *
* * * * * * * * * * * * * * * * * * * * * * * *
```

## MEMORANDUM OPINION AND ORDER

WOLSKI, Senior Judge.

      Petitioner Samuel Webb, representing himself, seeks review of a special master's decision dismissing his vaccine injury petition brought under the National Childhood Vaccine Injury Act of 1986, as amended, 42 U.S.C. §§ 300aa-10 through 34 (2018) (the Vaccine Act). Petitioner objects to the decision, arguing that his due process rights were violated when the Special Master did not hold a second preliminary status conference and did not strike references to Mr. Webb's criminal conviction and personal issues from a court filing, *see* Mot. for Review, ECF No. 96, at 2, 3–5, 9–11, and that the Special Master incorrectly weighed the evidence in determining petitioner's injury predated his vaccination, *id.* at 2, 6–8, 11–19. But, as explained below, the Court concludes that the Special Master did not abuse his discretion, err as to matters of law, or act arbitrarily or capriciously or otherwise contrary to law, and thus the decision of the Special Master is **SUSTAINED**.

---

[†] As neither party has requested redactions pursuant to Rule 18(b) of Appendix B to the Rules of the United States Court of Federal Claims (Vaccine Rules), the opinion is released for public access.

## I. BACKGROUND

### A. Vaccination and Diagnosis of Bell's Palsy

Petitioner, an inmate at the Arizona State Prison Complex in Tucson, seeks compensation for pain and paralysis of the left side of his face, which he associates with a seasonal influenza (flu) shot administered on November 20, 2012. *See* Am. Pet., ECF No. 79, at 2, 4–7; Pet., ECF No. 1, at 2, 5–6. This condition, marked by pain in the neck and face and facial numbness resulting in drooping around the eye, initially surfaced on the right side of Mr. Webb's face, necessitating a hospital visit on November 5, 2011. *See* Pet'r's Ex. 3, ECF No. 9-3, at 44. The ailment was diagnosed as Bell's palsy. *Id.* Two weeks later, petitioner received the flu vaccination for 2011, *see* Am. Pet. at 11; Pet. at 1–2, and over the next several months his condition improved, *see* Pet'r's Ex. 3 at 36, 38. In the fall of 2012, Mr. Webb made multiple routine visits to the health center of the Maricopa County jail where he was being held, *see* Am. Pet. at 3–4, for blood pressure monitoring and the drawing of blood, Pet'r's Ex. 3 at 33. During this same time period, Mr. Webb submitted multiple health needs requests (HNRs) related to his Bell's palsy. *See* Pet'r's Ex. 9, ECF No. 37-1, at 1, 2, 4. Among other things, these requests included tape for his eye, which is apparently used by palsy sufferers to keep the affected eye shut to aid with sleep. *See id.* He made the first of these requests on October 19, 2012, for an unspecified eye. *Id.* at 4. On October 24, 2012, Mr. Webb made another request, this time for tape for "eyes" in the plural. *Id.* at 2. And finally, he made another request on October 29, 2012, again for tape for an unspecified eye. *Id.* at 1.

Mister Webb received his 2012 seasonal flu vaccine on November 20, 2012. Ex. 3 at 8–9. Ten days later, on November 30, 2012, he visited the health center again for a scheduled appointment. *Id.* at 31. The medical record created by the physician assistant who attended to Mr. Webb indicates that petitioner reported that he had developed Bell's palsy on the left side of his face beginning September 21, 2012, and that the Bell's palsy on the right side of his face had resolved. *Id.* The record notes that Mr. Webb explained he "did not put [an] HNR in because he thought there is nothing that could be done," and that he believed his Bell's palsy was caused by stress, referencing his September 5, 2012 trial date. *Id.* Petitioner reportedly noted an improvement in the condition of the left side of his face since September, and the record indicates that "consistent [with] Bell's palsy," Mr. Webb had a "droop" and "inability to smile" on his left side. *Id.* Petitioner's guilty verdict was rendered on September 5, 2012, *see* Pet'r's Ex. 13 at 1, and the medical record from the November 30, 2012 appointment noted Mr. Webb would be sentenced to

the state facility on December 5, 2012, Pet'r's Ex. 3 at 31; *see also* Pet'r's Ex. 13 at 2.[1]

The following month, Mr. Webb was transferred to the state prison facility. The medical record from his intake processing, dated December 10, 2012, noted Mr. Webb's Bell's palsy, and stated he was "unable to close l[eft] eyelid." Pet'r's Ex. 5 at 189; *see also id.* at 37, 41.[2] The medical records from the state prison show his Bell's palsy persisting, yet somewhat improving over time. Over the next two and one-half years, he continued to use tape and artificial tears for his eyes. *See, e.g.*, Pet'r's Ex. 5 at 298, 302 (January 2013 eye drops requests), 184–85 (requests for tape due to Bell's palsy in March, April and June 2013), 181 (Sept. 24, 2013 request for tape and eye drops), 283 (Jan. 26, 2014 tape request), 277 (Mar. 11, 2014 eye drops request), 276 (Apr. 18, 2014 tape request), 273 (July 22, 2014 tape request), 10 (Nov. 6, 2014 tape request), 266–68 (December 2014 eye drops requests), 265 (Feb. 5, 2015 tape request), 264 (Apr. 29, 2015 tape request). In March 2013, Mr. Webb exhibited a "slight droop to his [right] cheek [and] jaw." *Id.* at 185; Ex. 5, ECF No. 16-2, at 32. One year later, he reported "slight pain in [his] face" and "scant facial paralysis." *Id.* at 178. Seventeen months later, a nurse's report from August 29, 2015, indicated that Mr. Webb suffered "facial deficits" and "bilateral bells [sic] palsy," with "mouth droop on left side of face" but no "weakness in forehead or eyelids." Pet'r's Ex. 5 at 6.

## B. Proceedings Before the Special Master

On July 29, 2015, Mr. Webb, represented by counsel, filed his initial petition for compensation under the Vaccine Act. *See generally* Pet., ECF No. 1. In this petition, Mr. Webb alleged that several days after he received the November 20, 2012 flu vaccination, he began to experience Bell's palsy symptoms on the left side of his face. *Id.* ¶ 17. Petitioner contended this vaccination "triggered facial nerve paralysis, consisting of facial palsy and pain on" the left side of his face. *Id.* ¶ 35. Accompanying the petition was an affidavit from Mr. Webb, in which he stated that his left side Bell's palsy symptoms began several days after his 2012 flu shot, and that these symptoms "prompted [him] to fill out a health request with the Correctional Health Services, and [he] was seen on November 30, 2012 with complaints about paralysis and pain on the left side of [his] face." Pet'r's Ex. 1, ECF No. 9-1, ¶¶ 17–18.

The Special Master, on August 4, 2015, issued an order, giving Mr. Webb thirty days to file any outstanding medical records, affidavits, and a statement of

---

[1] Petitioner's Exhibit 13 is found on pages seven and eight of ECF No. 76.

[2] This exhibit is split between ECF No. 16-1 and 16-2.


completion. Order, ECF No. 6. Over the course of several months Mr. Webb filed multiple motions seeking an enlargement of the time period in which to comply with the order, which the Special Master subsequently granted. *See* ECF Nos. 10–15, 17–19, 21–22. Mister Webb ultimately filed a statement of completion on January 19, 2016. *See* ECF No. 24. On March 21, 2016, the Secretary of Health and Human Services (Secretary) determined that the record was largely complete, with the possible exception of neurological test records. *See* ECF No. 27. Two days later, petitioner confirmed that a neurological evaluation had not been conducted. ECF No. 30. Pursuant to the Vaccine Rules, the Secretary subsequently filed his Rule 4(c) Report. *See* Resp't's Rep., ECF No. 32.

In this report, the Secretary maintained that Mr. Webb failed to meet any of the three prongs that must be shown to support compensation under the Federal Circuit's opinion in *Althen v. Sec'y of Health & Human Servs.*, 418 F.3d 1274, 1278 (Fed. Cir. 2005). *See* Resp't's Rep. at 8, 10–12. First, the Secretary noted that there was no expert report, medical record, or treating physician's opinion in the record that causally connected Mr. Webb's Bell's palsy to any flu vaccination. *Id.* at 10. In this regard, the Secretary cited a 2012 Institute of Medicine report, the relevant portion of which was subsequently filed as respondent's Exhibit A, *see* ECF No. 34-1, which concluded "the evidence favors *rejection* of a causal relationship between inactivated influenza vaccine and Bell's palsy." Resp't's Rep. at 10 (quoting INST. OF MED., ADVERSE EFFECTS OF VACCINES: EVIDENCE AND CASUALTY 337 (Kathleen Stratton et al. eds., 2012) (cleaned up)). And second, the Secretary contended Mr. Webb could show neither a logical sequence of cause and effect nor the appropriate temporal relationship between the shot and the symptoms, due to the medical record reporting that the left-sided Bell's palsy manifested two months before the November 20, 2012 flu vaccination. *Id.* at 11 (citing Pet'r's Ex. 3 at 31). The Secretary requested that the Special Master dismiss the petition. *Id.* at 12.

Pursuant to Vaccine Rule 5, the parties participated in the preliminary status conference on April 26, 2016. During that status conference, Mr. Webb's counsel requested thirty days in which to consult with petitioner to consider any next steps. *See* ECF No. 33. Petitioner obtained additional time to gather and file additional medical records from the county jail, *see* Order, ECF No. 36, and a second extension to provide time to confer with counsel before filing a status report, *see* ECF No. 39. Rather than filing a status report, however, petitioner's attorney moved instead to withdraw from the case. *See* ECF No. 40. Five days later, the second status conference in the case was held. *See* ECF No. 41. On October 13, 2016, Mr. Webb filed a motion for leave to amend his original petition. *See* Mot. for Leave to File Am. Pet., ECF No. 48. Shortly after a third status conference was held, in orders issued on November 2 and November 3, 2016, the Special Master granted the motion of petitioner's counsel to withdraw and the motion by Mr. Webb for leave to file an amended petition. *See* ECF Nos. 51, 52. In the latter, the

Special Master emphasized the contention of the Secretary that "the medical records showed that Mr. Webb reported symptoms of Bell's palsy before the administration of the vaccine." ECF No. 52, at 1 (citing Resp't's Rep. at 8).

Mister Webb then filed multiple motions to extend the deadline for filing his amended petition. *See* ECF Nos. 55, 58, 65. On August 9, 2017, petitioner filed three motions to exclude or strike from the record references to his criminal record and some of his personal issues, *see* ECF Nos. 71–73, which the Special Master denied as unnecessary given the lack of a jury, *see* ECF No. 82. On September 5, 2017, Mr. Webb filed another affidavit, in which he contends that the medical record from November 30, 2012, contained mistakes regarding his report of left-sided palsy symptoms, and in which he identifies other medical records he believes conflict with that record. *See* Pet'r's Ex. 14 ¶¶ 5–8.[3]

Petitioner eventually filed an amended petition on October 4, 2017. *See* Am. Pet. In the amended petition, Mr. Webb alleges that the November 20, 2012 flu shot caused an anaphylactic reaction, "swelling and pain in the cranial nerves in the left axis of the head/neck," resulting in "bilateral trigeminal neuralgia, fibromyalgia, and a chronic inflam[m]atory demyelinating polyneuropathy (CIDP) with paresthesia." Am. Pet. at 2. Based on his own medical research, he also suggests that the vaccination caused Guillain-Barré syndrome (GBS). *Id.* ¶¶ 14–15, 23. That same day, petitioner filed a statement that "all supporting exhibits or relevant records in support of the Amended Petition" had been filed. ECF No. 80.[4]

A fourth status conference in this matter was held on March 20, 2018, during which Mr. Webb was granted leave to file additional exhibits in support of his claim, and the Secretary was ordered to file a supplemental Rule 4 report. *See* ECF No. 87. On April 4, 2018, Mr. Webb filed his Exhibit 24, containing two medical articles on Bell's palsy and flu vaccine information from the Centers for Disease Control and Prevention. *See* ECF No. 88. Two months later, on June 4, 2018, the Secretary simultaneously filed a supplemental Rule 4(c) Report and a motion to dismiss the petition. Resp't's Suppl. Rule 4(c) Rep. (Suppl. Rep.), ECF No. 89; Resp't's Mot. to Dismiss (Resp't's Mot.), ECF No. 90. The Secretary maintained that "[p]etitioner's entire case rests upon his own assertions, which are contradicted by the medical records and not supported by a qualified medical expert." *See* Suppl. Rep. at 4. The Secretary further noted that the additional conditions alleged in the Amended

---

[3] This affidavit is found on pages ten through thirteen of ECF No. 76.

[4] Filed two days earlier, but apparently submitted contemporaneously with the Amended Petition, was Mr. Webb's "Theory of Causation" paper, which includes another affidavit and the medical research he gathered in support of his petition. *See* ECF No. 78.

Petition, such as GBS and CIDP, were not diagnosed by any physicians, and argued that contemporaneous medical records showed that the onset of Mr. Webb's left-sided Bell's palsy happened before he received the flu shot in November 2012. *Id.* at 4–5. With nobody but petitioner himself asserting a causal connection between the vaccination and his condition, and record evidence showing the vaccine post-dated the symptoms, the Secretary requested that the petition be dismissed. *See id.* at 4–6; Resp't's Mot. at 1.

Petitioner filed a response to the Secretary's motion, arguing that the medical record showing the September 2012 onset of left-sided Bell's palsy was "incorrectly recorded," had been explained in his subsequent affidavit, and was contradicted by other records which did not mention the condition. Resp. to Mot. to Dismiss, ECF No. 91, at 2–3 (quoting 42 U.S.C. § 300aa-13(b)(2) and citing, *inter alia*, Pet'r's Ex. 3 at 33; Pet'r's Ex. 9 at 7; Pet'r's Ex. 14). Petitioner also noted that he was unable to see a neurologist due to his prison confinement and maintained that he has provided a logical theory of causation supported by credible medical literature. *Id.* at 3–6. He also pointed to records containing his self-report that he was allergic to the flu vaccine. *Id.* at 6 (citing Pet'r's Ex. 22 at 38; Pet'r's Ex. 23 at 3).

The Special Master granted the Secretary's motion to dismiss the petition under Vaccine Rule 8(d). *See* ECF No. 95 at 1, 17; *Webb v. Sec'y of Health & Human Servs.*, No. 15-803V, 2018 WL 5292226, at *1, *10 (Fed. Cl. Spec. Mstr. Sept. 27, 2018). After closely reviewing the relevant medical records for the period from September to December 2012 and the affidavits filed by Mr. Webb, *see* ECF No. 95 at 4–8; *Webb*, 2018 WL 5292226, at *3–4, the Special Master concluded that the November 30, 2012 medical record was the most reliable evidence concerning the onset of Mr. Webb's left-sided Bell's palsy, ECF No. 95 at 11; 2018 WL 5292226, at *7. Despite Mr. Webb's characterization of it as a "medical records blunder," Pet'r's Ex. 14 at 4, the Special Master found this particular record to be "precise, cogent, and clear," "relatively complete and comprehensive," "internally consistent," and containing "a narrative of events that is tied to other events in Mr. Webb's life," ECF No. 95 at 11; 2018 WL 5292226, at *7.

The Special Master was not persuaded that the author of the medical record mistakenly recorded Mr. Webb's reported onset to be September rather than November, as the record used both the number "9" and abbreviation "Sept." to refer to the month when left-sided Bell's palsy began, and also associated the condition with stress resulting from Mr. Webb's September 5, 2012 guilty verdict. ECF No. 95 at 12; 2018 WL 5292226, at *7. The Special Master also found that the September 21, 2012 date of onset was not undermined by the lack of any reference to the condition in medical records from October and November 2012, as these were for specific tests unrelated to the condition, and Mr. Webb's own testimony was that he did not report the condition "because there was nothing that could be done."

-6-

ECF No. 95 at 12 (quoting Pet'r's Ex. 14 ¶ 2); 2018 WL 5292226, at *7 (same). The Special Master also discussed the minimal evidentiary value of Mr. Webb's HNRs requesting tape to shut closed either an "eye" or "eyes," and petitioner's mistaken recollection that the November 30, 2012 appointment was requested because of the problems with the left side of face, rather than being a previously-scheduled visit for hypertension monitoring. ECF No. 95 at 12–13; 2018 WL 5292226, at *7–8. Because he found Mr. Webb's symptoms predated the November 20, 2012 flu vaccine, the Special Master determined that petitioner's other claims could not succeed, and he also found them unsupported by the medical records. ECF No. 95 at 13–15; 2018 WL 5292226, at *8–9. The Special Master also explained why he determined a hearing was not necessary in the case, as "the documentary record appears complete," the discrepancies in Mr. Webb's affidavits "lessen the likelihood of receiving reliable testimony" from him orally, and no potential third-party witnesses had been identified. ECF No. 95 at 16–17; 2018 WL 5292226, at *10.

## C. Petitioner's Motion for Review

Mister Webb timely moved for a review of the Special Master's decision by this Court. *See* Mot. for Review, ECF No. 96. He argues that his due process rights were violated because the Special Master was prejudiced by references in the Secretary's Vaccine Rule 4(c) Report to one of Mr. Webb's personal issues and to the crime of which Mr. Webb was convicted. *See* Mot. for Review at 2–5, 9–10. Petitioner notes the Special Master's use of the word "opportunistic" to describe Mr. Webb's affidavits, and contends this reflects prejudice. *See id.* at 3–4, 6, 10, 19. And he argues that the filing of the Secretary's supplemental Rule 4(c) Report entitled him to a second Vaccine Rule 5 preliminary status conference, at which he could have addressed any adverse tentative impressions held by the Special Master. *See id.* at 2–3, 10–11, 19. Petitioner also objects to the manner in which the Special Master weighed the evidence in the record concerning the onset of the alleged vaccine injury, and explains the weight he believes should have been given to the various records, including his affidavits. *See id.* at 11–19.

The Secretary filed a timely response to the motion for review. *See* Resp't's Resp., ECF No. 102. He argued that the court cannot re-weigh the evidence, *id.* at 7 (citing *Porter v. Sec'y of Health & Human Servs.*, 663 F.3d 1242, 1249 (Fed. Cir. 2011)), and that the Special Master's explanation of the onset determination was thorough and not arbitrary, *id.* at 7–8. Respondent also noted that the Special Master did not rely on the allegedly prejudicial information about Mr. Webb and used the word "opportunistic" in comparing petitioner's affidavits and the medical records. *Id.* at 8–9. The Secretary contended that a second Rule 5 conference was not legally required and was not shown to be necessary for due process, as Mr. Webb filed a response to the motion to dismiss and participated in one status conference himself and three others through counsel. *Id.* at 9–10.

-7-

In light of his *pro se* status, Mr. Webb was permitted to file a reply and a supplement to the reply in support of his motion for review. *See* ECF No. 105. In his reply, petitioner maintains that the Amended Complaint was a supplemental pleading under Rule 15(d) of the Rules of the United States Court of Federal Claims (RCFC), and that by allowing this filing and then ordering a supplemental Rule 4(c) Report, the Special Master made a "procedural commitment" entailing another Vaccine Rule 5 conference, to which the Secretary did not object. Pet'r's Reply, ECF No. 104, at 3–4. He also argued that the Special Master's findings should receive no deference because a second Vaccine Rule 5 conference was not held, *id.* at 6, and highlighted an October 9, 2012 medical record which he contends proves he did not suffer the left-sided facial palsy symptoms prior to the vaccination, *id.* at 6–7 (citing Pet'r's Ex. 3 at 33). He revisited this medical record in the supplement to his reply, noting that the registered nurse who attended to him made the objective observation that Mr. Webb did not appear to be in distress. Sur-reply, ECF No. 106, at 2; *see also* Pet'r's Ex. 3 at 33. Petitioner contends this record thus "negates the existence" of left-sided facial palsy at that time. *Id.* (citing *Murphy v. Sec'y of Health & Human Servs.*, 23 Cl. Ct. 726, 733 (1991), *aff'd*, 968 F.2d 1226 (Fed. Cir. 1992)). In his supplemental response, the Secretary noted that the Special Master considered the October 9, 2012 record to be "relevant and probative" and explained how the record factored into the decision. Resp't's Suppl. Resp., ECF No. 107, at 1.[5]

## II. DISCUSSION

### A. Legal Standard

Under the Vaccine Act, a special master makes compensation determinations via findings based "on the record as a whole" and "a preponderance of the evidence." 42 U.S.C. § 300aa-13(a)(1) (2018). "The special master or court may not make such a finding based on the claims of a petitioner alone, unsubstantiated by medical records or by medical opinion." *Id.* (flush text). A special master must consider all the "relevant medical and scientific evidence contained in the record," including any "diagnosis, conclusion, medical judgment, or autopsy . . . regarding the nature, causation, and aggravation of the petitioner's illness, disability, injury, condition, or death" and "the results of any diagnostic or evaluative test which are contained in the record and the summaries and conclusions." *Id.* § 300aa-13(b)(1). The Act further specifies that "[a]ny such diagnosis, conclusion, judgment, test result, report, or summary shall not be binding on the special master or court." *Id.* A special master is entrusted with evaluating the "weight to be afforded to any" of these sources of information. *Id.* A special master's "assessments of the credibility

---

[5] The Court is using the internal pagination of this paper, not the ECF pagination.

of the witnesses" are "virtually unchallengeable on appeal." *Lampe v. Sec'y of Health & Human Servs.*, 219 F.3d 1357, 1362 (Fed. Cir. 2000).

Medical records "warrant consideration as trustworthy evidence." *Cucuras v. Sec'y of Dep't of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993). These records are "generally contemporaneous to the medical events," and "accuracy has an extra premium" because a patient's proper treatment is "hanging in the balance." *Id.* Therefore, "it [is] not erroneous to give greater weight to contemporaneous medical records than to later, contradictory testimony." *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1382 (Fed. Cir. 2021).

In reviewing a special master's decision, our court may "set aside any findings of fact or conclusion of law of the special master found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and issue its own findings of fact and conclusions of law." 42 U.S.C. § 300aa-12(e)(2)(B) (2018). If the special master's findings of fact and conclusions of law are not arbitrary and are in accordance with the law, the Court must sustain the special master's decision. *Turner v. Sec'y of Health & Human Servs.*, 268 F.3d 1334, 1337 (Fed. Cir. 2001). Findings of fact are to be reviewed under the "arbitrary and capricious" standard; legal questions are to be reviewed under the "not in accordance with law" standard; and an abuse of discretion standard is used for discretionary rulings. *See Munn v. Sec'y of Dep't of Health & Human Servs.*, 970 F.2d 863, 870 n.10 (Fed. Cir. 1992). With respect to the arbitrary and capricious review standard, "no uniform definition of this standard has emerged," but it is "a highly deferential standard of review" such that "[i]f the special master has considered the relevant evidence of record, drawn plausible inferences and articulated a rational basis for the decision, reversible error will be extremely difficult to demonstrate." *Hines ex rel. Sevier v. Sec'y of Dep't of Health & Human Servs.*, 940 F.2d 1518, 1527–28 (Fed. Cir. 1991).

## B. Analysis

### 1. Petitioner Was Not Denied Due Process

Petitioner raises two objections to the Special Master's proceedings on due process grounds. *See* Mot. for Review at 2–6, 9–11, 19; Pet'r's Reply at 3–6. The first ground is that the Special Master denied Mr. Webb's motions to remove references to a personal issue of petitioner and to the specific crime Mr. Webb was found guilty of committing. Mot. for Review at 2–5, 9–10. The Court fails to see how the Special Master's denial of these motions could have possibly been prejudicial to Mr. Webb. In the order denying the motions, the Special Master expressly determined that the references Mr. Webb sought to exclude were "not, at all, probative to the question of whether he is entitled to compensation in this

-9-

matter." ECF No. 82 at 1. He then explained that the absence of a jury in these proceedings made exclusion of the documents unnecessary, citing an appellate decision that noted that "in a bench trial . . . [a] judge can also exclude . . . improper inferences from his mind in reaching a decision." *Id.* at 1–2 (quoting *Gulf States Utils. Co. v. Ecodyne Corp.*, 635 F.2d 517, 519 (5th Cir. 1981)). And indeed, the decision dismissing the petition does not mention either of these matters at all, much less rely upon them in judging petitioner's case. *See* ECF No. 95 at 1–17; *Webb*, 2018 WL 5292226, at *1–10. Finally, no prejudice or bias may rightly be inferred from the comment of the Special Master that "Mr. Webb's statements have been internally inconsistent and appear opportunistic insofar as the averments have, over time, shifted to comport with the medical records." ECF No. 99 at 16; *Webb*, 2018 WL 5292226, at *10. Rather than reflect a consideration of the information Mr. Webb sought to exclude, this statement is based on the discrepancies between the contemporaneous medical records and the varying claims made in the affidavits created by petitioner years later. *See* ECF No. 95 at 4–8, 11–13; *Webb*, 2018 WL 5292226, at *3–4, *7–8. The Special Master's refusal to exclude certain information from the record was not an abuse of discretion or contrary to law, did not violate due process, and was irrelevant to his decision.

Petitioner's second ground for a due process violation is that the Special Master did not hold a second preliminary status conference under Vaccine Rule 5, following the filing of the Secretary's supplemental Vaccine Rule 4(c) report. *See* Mot. for Review at 9–11. Petitioner maintains he had a right to such a conference, that he could have used the opportunity to dispel any misconceptions of the Special Master, and that without such a conference the decision dismissing the case was issued without warning. *Id.* at 2, 9–11, 19. But the Vaccine Rules do not expressly require a second preliminary status conference in the wake of supplemental Vaccine Rule 4(c) report, *see* Vaccine Rules 4–5, and thus this matter comes under the Special Master's power to conduct all proceedings, under which he has "wide discretion," *Burns by Burns v. Sec'y of Dep't of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (citing Vaccine Rule 3(b)). To be sure, this discretion must be exercised consistent with the due process obligation to provide "notice and an effective opportunity to be heard at a meaningful time and in a meaningful manner." *Campbell ex rel. Campbell v. Sec'y of Health & Human Servs.*, 69 Fed. Cl. 775, 778 (2006) (citing, *inter alia*, *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985)). Under the circumstances, the Court cannot find this discretion to have been abused by the Special Master.

In the first place, the basis for the decision to dismiss the petition was the medical record dated November 30, 2012, which indicated that Mr. Webb's left-sided facial palsy had an onset predating the November 20, 2012 vaccination. *See* ECF No. 95 at 11–13; *Webb*, 2018 WL 5292226, at *7–8. This issue was addressed in the Secretary's initial Rule 4(c) Report, *see* ECF No. 32 at 5, 11, and thus would have

-10-

been addressed at the Vaccine Rule 5 conference that *was* held, on April 26, 2016, *see* ECF No. 33. Second, a month after this conference, petitioner's then-counsel informed the Special Master that Mr. Webb was "adamant that the [medical] history is incorrect," ECF No. 35 at 1, and Mr. Webb ultimately filed two separate affidavits giving his version of the relevant events, *see* Pet'r's Ex. 14, ECF No. 76 at 10–13; Pet'r's Ex. 10, ECF No. 79 at 16–20. Third, to the extent matters raised in the supplemental Rule 4(c) Report were pertinent to the motion to dismiss the petition, Mr. Webb was given the opportunity to address these in his response to that motion. *See* ECF No. 91 at 1–6. Thus, petitioner was amply afforded notice and a meaningful opportunity to be heard concerning the dispositive issue of the onset of his condition---including three status conferences with his previous counsel and one in which he personally participated. *See* ECF Nos. 33, 41, 51, 87.

Moreover, the Special Master had no obligation to hold a hearing or to receive oral testimony from Mr. Webb. *See K.L. v. Sec'y of Health & Human Servs.*, 134 Fed. Cl. 579, 605 (2017). The Vaccine Act does not mandate hearings, but rather provides that "[i]n conducting a proceeding on a petition a special master . . . may conduct such hearings as may be reasonable and necessary." 42 U.S.C. § 300aa-12(d)(3)(B)(v). Vaccine Rule 8 grants a special master broad discretion in how he runs proceedings, and expressly provides he "may decide a case on the basis of written submissions without conducting an evidentiary hearing." Vaccine Rule 8(d). Thus, the Federal Circuit has concluded that "[t]he decision to hold an evidentiary hearing is statutorily committed to the discretion of the Special Master." *D'Tiole v. Sec'y of Health & Human Servs.*, 726 F. App'x 809, 812 (Fed. Cir. 2018) (citing 42 U.S.C. § 300aa-12(d)(3)(B)(v)). Here, the Special Master adequately explained his exercise of this discretion, as the documentary record was complete, Mr. Webb's affidavits obviated the need to hear his oral testimony, and no third-party witnesses were identified by petitioner. ECF No. 95 at 16–17; *Webb*, 2018 WL 5292226, at *10. The proceedings before the Special Master thus afforded Mr. Webb all the process he was due, and no discretion was abused.

### 2. *The Special Master Did Not Act Arbitrarily or Capriciously*

Petitioner's second objection to the decision under review is that the Special Master did not properly weigh the evidence in the record in determining the date of onset of Mr. Webb's left-sided facial palsy. *See* Mot. for Review at 2, 5–8, 11–19. He provides a graphic depiction of the scale for weighing the relevant evidence, *id.* at 6, and then describes the relevant pieces of evidence and the weight he believes each should be assigned, *id.* at 13–19. But while Mr. Webb may be commended for the creativity of his exposition, this exercise is one that a court must eschew, for we may "not reweigh the factual evidence, assess whether the special master correctly evaluated the evidence, or examine the probative value of the evidence or the credibility of the witnesses---these are all matters within the purview of the fact

finder." *Porter*, 663 F.3d at 1249. Because of the great deference that is given to a special master under the arbitrary and capricious review standard, a reviewing court merely confirms whether "the special master has considered the relevant evidence of record, drawn plausible inferences and articulated a rational basis for the decision." *Hines ex rel. Sevier*, 940 F.2d at 1527–28. The court's "role is not to second guess the Special Master's fact-intensive conclusions particularly in cases in which the medical evidence of causation is in dispute." *Cedillo v. Sec'y of Health & Human Servs.*, 617 F.3d 1328, 1338 (Fed. Cir. 2010) (cleaned up) (citing *Hodges v. Sec'y of Health & Human Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993)); *see also Ryman v. Sec'y of Dep't of Health & Human Servs.*, 65 Fed. Cl. 35, 41 (2005) (explaining that "where the medical evidence of causation is in dispute, a high level of deference is due the [special master's] fact-finding" (citing *Hodges*, 9 F.3d at 961)). Factual matters meriting this deference include the determination of the date of onset of an injury or illness. *See Locane v. Sec'y of Health & Human Servs.*, 685 F.3d 1375, 1380 (Fed. Cir. 2012).

The Special Master's decision clearly shows that he considered all the evidence that Mr. Webb thought was relevant, *see* Mot. for Review at 13–18---the November 30, 2012 medical record, Pet'r's Ex. 3 at 31, *see* ECF No. 95 at 5–6, 11–12; *Webb*, 2018 WL 5292226, at *3, *7; the records relating to blood pressure tests and blood draws, Pet'r's Ex. 3 at 33, *see* ECF No. 95 at 5, 12; *Webb*, 2018 WL 5292226, at *3, *7; the HNRs submitted by Mr. Webb during the months in question, Pet'r's Ex. 9, *see* ECF No. 95 at 5, 12–13; *Webb*, 2018 WL 5292226, at *3, *7–8; and Mr. Webb's affidavits, Pet'r's Exs. 10 & 14, *see* ECF No. 95 at 7–8, 12–13; *Webb*, 2018 WL 5292226, at *4, *7–8. The Special Master plausibly explained the inferences he drew from these records---including the likely accuracy of the November 30, 2012 record due to the use of two different means to express the month of September and the tying of the palsy onset to the stress of trial events occurring in September; that medical providers performing unrelated, prescheduled medical tests would not necessarily note Mr. Webb's palsy; that the lack of HNRs concerning the left-sided palsy was consistent with Mr. Webb's admission that he did not submit any "because there was nothing that could be done," Pet'r's Ex. 14 ¶ 2; and that the unreliability of petitioner's memory is shown by his mistaken belief that the November 30, 2012 appointment resulted from an HNR concerning the left-sided palsy. ECF No. 95 at 11–13; *Webb*, 2018 WL 5292226, at *7–8. As a result, he articulated a rational basis for his conclusion that Mr. Webb's left-sided injury had on onset which predated the November 20, 2012 flu vaccination. *See* ECF No. 95 at 11–13, 15; *Webb*, 2018 WL 5292226, at *7–9.

Whether or not this Court would have analyzed the evidence in the same way and reached the same conclusion is irrelevant under the arbitrary and capricious standard of review. What matters is whether the Special Master had "considered the relevant evidence of record, drawn plausible inferences and articulated a

rational basis for the decision," *Hines ex rel. Sevier*, 940 F.2d at 1527–28---and here, he did.

Although petitioner contends that no deference should be given to the Special Master's determinations, presumably because Mr. Webb was not given the chance to orally discuss the issue of onset of his left-sided Bell's palsy at an additional status conference, *see* Pet'r's Reply at 6, it is well-established that this deference extends to credibility determinations regarding written testimony. *See, e.g.*, *Burns by Burns*, 3 F.3d at 417 (upholding credibility determination giving greater weight to contemporaneous medical records than to inconsistent affidavits from petitioner); *K.L.*, 134 Fed. Cl. at 609 ("As the factfinder, the Special Master has discretion to make determinations regarding the credibility of all the information provided orally and in writing by fact and expert witnesses, *whether they testify in person at a hearing or submit reports or affidavits for the record*." (emphasis added)); *Ryman*, 65 Fed. Cl. at 41–42 (deferring when a special master discounted a petitioner's affidavit due to conflicts with contemporaneous medical records). Concerning the absence of any specific reference to Mr. Webb's left-sided symptoms in other medical records from September to November 2012, the Federal Circuit has recently emphasized that medical records should not be presumed "accurate and complete as to all the patient's physical conditions." *Kirby*, 997 F.3d at 1383. Accordingly, silence about symptoms need not be taken as proof that those symptoms were not present. *Id.* And regardless of how the Court might have interpreted the document, it was not arbitrary for the Special Master to conclude that a medical notation indicating that petitioner had no complaints and did not appear to be in distress, *see* Pet'r's Ex. 3 at 33, made by a nurse taking Mr. Webb's blood pressure, did not demonstrate the absence of symptoms, given another medical record noting that Mr. Webb said he did not report the left-sided palsy "because he thought there was nothing that could be done," *id.* at 31; *see also Kirby*, 997 F.3d at 1383 (finding general statements that a petitioner was "feeling fine" with "no complaints" not to be inconsistent with the presence of specific ailments).

The Court recognizes that, in many ways, petitioner's submissions were impressive, such as the Amended Complaint and "Theory of Causation" paper, ECF Nos. 78 & 79---particularly given the challenge of representing one's self while held in confinement.[6] But even if Mr. Webb were correct that the November 30, 2012 document was a "medical records blunder," Pet'r's Ex. 14 ¶ 1, the Special Master has amply explained why he concluded this contemporaneous medical record was

---

[6] The Court, however, is not aware of any cases in which a petitioner's self-diagnosis has been taken to prove an illness or condition. *See* 42 U.S.C. § 300aa-13(a)(1) ("The special master or court may not make such a finding based on the claims of a petitioner alone, unsubstantiated by medical records or by medical opinion.").

-13-

the best evidence of onset, rationally discussing the relevant evidence in the record and the weight or reliability he assigned to each medical record or affidavit, *see* ECF No. 95 at 11–13, 15; *Webb,* 2018 WL 5292226, at *7–9. Such findings cannot be found to be arbitrary and capricious and cannot be disturbed by a reviewing court. *See, e.g., Kirby,* 997 F.3d at 1384; *Locane,* 685 F.3d at 1380; *Cedillo,* 617 F.3d at 1338; *Lampe,* 219 F.3d at 1362; *Cucuras,* 993 F.2d at 1528.

## III. CONCLUSION

For the foregoing reasons, petitioner's motion for review is **DENIED** and the decision of the Special Master is **SUSTAINED**. The Clerk of Court is directed to enter judgment for respondent.

**IT IS SO ORDERED.**

VICTOR J. WOLSKI
Senior Judge